Now in Appeal 1079 from 2008, In Re Alonso. Traffic jam at the well of the court here. We have too many chairs here. We'll have to look into that. Ms. Johnson, we'd like to proceed as soon as you can be ready. Good morning. Welcome to you. Please proceed. Good morning, Your Honors. May it please the court. The board committed two fundamental errors in finding that Claim 92 lacked adequate written description support. The first was the misapplication of this court's written description precedent to the largely undisputed facts of this case. The second was a failure to fully understand the claimed invention. For these reasons, the board's decision should be reversed. The claim in Claim 92, which is on appeal, is a method for treating a patient with a rare form of cancer of the peripheral nerve called neurofibrosarcoma. Sure, but it has a portion in it that claims certain antibodies. Antibodies are proteins, structures. Yes, they are. Of course, the claim overall is a method claim, but the part in question is not to a method, it's to antibodies. Correct. Those antibodies need to be described in order to survive the requirements of Section 112. Absolutely, Your Honor. Okay, so then why do you say that the board and the examiner misunderstood the nature of the claim? The part that counts, they understood quite correctly to be directed to a thing, not a method. Your Honor, the claim, as you said, has two parts. The first part is the method for treating a patient with neurofibrosarcoma, and we agree that the board understood that part correctly. The second part goes to the heart of the invention, and this is the part that Dr. Alonzo submits that the board misunderstood. Let me be sure I'm following you. Are you saying that the second part of the claim is still a method, not a thing? Well, it defines... An antibody is a thing. It is a thing, but according to the second part of Claim 92, it is a thing that is specifically generated to a specific person's neurofibrosarcoma tumor. Sure. And the way that this is made ensures, in fact, that this antibody will bind the specific patient's tumor. Okay. That just means the invention works. That doesn't mean it's adequately described. The issue in the case is, was it adequately described? And Dr. Alonzo submits that, in fact, the specification established that he had possession, which is the test, of the method of treating using these customized antibodies. Well, I would suggest to you that the purpose of the test is to assure actual possession by a purported inventor of the claimed invention. But the test itself requires a description of structure if the claim limitation in issue is drawn to structure. So where is there any description of the structure of these antibodies? A couple of places, Your Honor. First, Dr. Alonzo, as you mentioned, he made this customized antibody and he used that antibody to treat a patient. The antibody was deposited with the ATCC and the antigen to which that antibody bound was characterized by its molecular weight. In addition... Wait a minute. So far, I don't hear any structure whatsoever of the antibody. And I hear one aspect of structure, molecular weight for the antigen. Yes, Your... So how is that adequate? You can't be arguing, can you, that citation of molecular structure fully characterizes an antigen? Your Honor, it's also a case where the antibody is representative of the narrow genus of antibodies that are made according to the second part of Claim 92. And in addition... Where does it say that in the... It says wherein said monoclonal antibody is secreted from a human-human hybridoma derived from the neurofibrosarcoma cells. That means that if I'm the patient under treatment, a tumor cell from me is isolated, an antibody specific to that tumor is generated using this hybridoma, and that antibody is administered directly back to me, the patient, to treat my tumor. I follow all that, but I'll shoot back to the Chief Judge's question, where is the structure? Where's the beat? Well, there's the built-in structure-function relationship that is present in antibody technology. But for that to work, as I understand it, you have to have either a description of the structure of the antibody or a fully characterized antigen. And if you have the latter, then because of the maturity of the science, you can infer what the structure of the antibody is. But the argument of the patent office here seems to be that there's no description whatever of the structure of the antibody, and there's no description, no full characterization, rather, of the antigen, merely molecular weight which falls far short, they say, of full characterization of the antigen. So you have two choices, but they're saying you didn't make it on either route. Well, I think that the written description test is somewhat less rigid than the patent office sets forth. Enzo also described a way to satisfy the written description requirement, where there is function in correlation with a well-characterized, disclosed, or known way that correlates structure to function. Are we back then to whether stating the molecular weight of the antigen fully enough characterizes it to trigger the structure-function relationship that we all understand? And the office seems to be saying, no, molecular weight won't do it, it'll take a lot more than that. You're saying, yes, molecular weight is enough. What's the basis of saying that molecular weight counts as fully characterizing the antigen? Well, Your Honor, the PTO does not dispute that the antibody, the reduction to practice in the specification, has adequate written description. The question is more whether the narrow genus of antibodies that will be used in the claimed treatment method has adequate written description. And based on this narrow genus and the combination of the structure-function correlation between antibodies and antigens, which really harnesses the power... Do you have any authority that an antigen is adequately characterized for 112 purposes merely by stating its molecular weight? Your Honor, I believe it's example 16 of the written description guidelines, which the PTO includes in its addendum to its brief. Those talk about an example where there is written description requirement, written description requirement was met, and the only characterization of that antigen is indeed its molecular weight. I thought that example talked about the antigen having been isolated, purified, and several other verbs, not merely shown for its molecular weight. Your Honor, Dr. Alonzo did also purify his antibody as disclosed in the... Sorry, purify his antigen as disclosed in the specification. He showed also, by means of characterization of this antigen, that the antibody specifically bound that patient's tumor. He also showed that the antibody did not bind nonspecific tissues. So, in addition to molecular weight, he did also, in fact, characterize its binding properties. But that's function. Where is there a structure for the antigen any more than structure for the antibody? As Enzo recognized, antibodies have a well-defined structure. The antibodies all have this Y shape, which is well-defined. Yeah, but that's not the part that counts. The part that counts is the little part that binds. The fact that the rest of the structure is uniform and well-known and unchanging doesn't help us if the mechanism that causes the binding effect varies. Yes, but that is precisely the point of the invention.  versus another patient practicing the method. But that is the precise point of the invention, to render that... No one is questioning the cleverness or the potential value of the invention. The only question is whether the specification adequately describes, for purposes of 112, either the antibody or the antigen to which it binds. And to say that, well, this worked great and it helped Melanie Brown, is irrelevant, it seems to me. It's nice, but it doesn't answer the legal question. It answers a medical question or a commercial question or a scientific breakthrough question, but it doesn't answer the legal question. Your Honor, Dr. Alonzo submits that it does, because you can have one species have written description support for a broader genus. And we submit that in this case, that genus was so narrow and that Dr. Alonzo possessed one species. What do you mean it's so narrow? You know, the lawyers give us a horrible dilemma here. They say it's very broad and highly varied. You say it's very simple and very narrow. Well, how are we supposed to decide which characterization is correct? What's your basis of saying it's very, very narrow? The claim language itself. The claim language says that where the antibody comes from a hybridoma to that neurofibrosarcoma cell, when you make the hybridoma, the hybridoma will only produce one specific antibody with the same exact variable region that you were mentioning. If the question is more for... Yeah, but that would win the case for you if this claim was limited to Melanie Brown. Except, Your Honor, that it is representative of this narrow genus. The PTO has not shown... What is the basis of saying the narrow is genus? Let's suppose there are 1,000 different kinds of cancer. And let's suppose, as the article seemed to suggest, that even a given type of cancer varies from patient to patient. So now we're talking about thousands, tens of thousands, hundreds of thousands of different antigens potentially. How is that a narrow genus? That sounds like a very broad genus to me. That does indeed sound like a very broad genus. Then that is not the case of Claim 92. Dr. Alonzo's invention is to one type of cancer, neurofibrosarcoma, not all types of cancer. It's not even to treating all neurofibrosarcoma patients with the same antibody. Rather, it is to treating a specific patient with an antibody to that specific tumor. That makes that claim much more narrow than what you have posited in your hypothetical. And the PTO has not shown by substantial evidence that, in fact, that the genus is going to be broad and diverse. Put it another way. I mean, I might be able to find all of that out if I took the method described and went to my lab and ran enough examples that eventually I could get to where you are. I think what the Chief Judge is asking is where do we find this and be a patent? Well, there is no dispute that antibody technology has this built-in structure-function relationship. It also is no dispute that Dr. Alonzo, in fact, carried out his claimed method using an antibody made according to the claim. It works. There's no question it works. Absolutely, Your Honor. That's not the issue. The issue is where is the adequate description, not does the invention work. We agree the invention works. I'm prepared to say it's very clever and a nice breakthrough and he's a wonderful doctor and so on and so on, but it's not relevant to whether under the case law the description is adequate. Your Honor, the test for written description is whether Dr. Alonzo conveyed in the specification that he had possession of the genus of antibodies that could be used in this claimed treatment method. He possessed one species. That is not in dispute. The genus is narrow. It is to that one particular patient and the PTO has not shown with substantial evidence otherwise and there's this built-in structure-function relationship that harnesses the power of hybridoma technology to predictably produce monoclonal antibodies that will necessarily bind to a specific patient's tumor. Requiring Dr. Alonzo to characterize in detail every antigen on every neurofibrosarcoma tumor would create a legal impossibility for satisfying the written description requirement in this case. As the board noted... No one has ever suggested that to justify a genus you have to list every possible species. No one has ever suggested such an extreme thing. The question is whether by listing one species you can get a genus. And normally, in most cases, the answer is no. That you would need some range or several representative species in order to justify the genus. So then the question is, well, why shouldn't that requirement apply here in such a way as to block patentability? Your Honor, that requirement applies in technologies where there is no relationship between the members of the genus, such as was in the case in Rochester, and where the technology is very unpredictable. And in this case, the board recognized that a neurofibrosarcoma antigen across all patients did not exist, which was precisely why the invention raised an antibody specific to that very patient instead. Do we know, by the way, how many different antigens appear on different tumors of different patients who have this particular type of cancer? Is it in the tens? Is it in the hundreds? Is it in the thousands? Are there tens of thousands? Do we have any clue about what we're talking about here in terms of numbers? Not much, Your Honor, and the PTO has not shown by substantial evidence. How can you say it's a narrow genus? If you have no idea how many species are in the genus, how can you say it's a narrow genus? Because the claim language, the second half of the claim ensures that the hybridoma that is produced will just produce one antibody. Per patient? Per patient, and that is the patient that is being treated in the method according to Claim 92. Yeah, but the claim would cover all patients who have this type of cancer and got this kind of therapy, right? So long, Your Honor, as that patient was treated with the antibody directed to his very own tumor. Well, sure, it would because it requires that the antibody be derived from the cancer cell off the tumor surface. Yes, Your Honor. Well, let's hear from the government and we'll give you back the time you have to reserve. Ms. Congo, she says it's a very narrow genus, you say it's a very broad genus. Somebody's got to give us some help here. How are we to know, how to decide how narrow or broad the genus is? Well, there are fact findings in this case that were made by the examiner. Five consecutive times the examiner found that the genus was broad. In fact, the genus, the examiner... Okay, but what's the basis of that finding? Well, here's one example. The examiner found that the term neurofibrosarcoma, as used in Claim 92, would encompass a variety of different types of cancers. The examiner at page A468 of the record identified five different types of cancers. Hypoglossal nerve cancer, sciatic nerve cancer, vaginal nerve cancer... Those are members of the family of neuros... Of the different types of neurofibrosarcomas encompassed by this claim. Okay. And this Court is correct that the claim is drawn to a method of treating using customized antibodies. The PTO doesn't dispute that. But what the PTO disputes is it covers all of those antibodies in the aggregate for all patients, all forms of neurofibrosarcoma, and all different neurofibrosarcoma antigens out there. Okay, but what's wrong with that? It covers a lot. It covers a lot. But, I mean, that has to do with the breadth of the claim, which might have something to do with obviousness or something else. But what does it have to do with written description? That's the only defect found by the Board. Correct. But what the Board found is that to support this broad genus, Applicant Alonzo relied upon one representative species in Example 2. And as this Court has acknowledged, in most cases, one species for a broad genus is not adequate written description support. This is your analogy to Rochester? Correct, Your Honor. The facts here are exactly like those in Rochester with one de minimis difference. The claim there was drawn to a method of inhibiting COX-2 by the administration of a non-steroidal compound. The specification didn't describe any compounds. Here, very closely, we have a method of treating neurofibrosarcoma via the administration of customized antibodies. The specification describes only one antibody, and that's where Lilly comes in to fill the gap. But the 19 pages in the specification would equally get you to any other antibody. You know, if one person has cancer with one kind of antigen, and you derive the antibody to treat that patient with their cancer cell, it'll work according to the method in the 19 pages in the spec. Then you get to the next patient, same thing. You take their cancer cell, and you follow the 19 page protocol, you'll get an antibody that will match the antigens of that patient. So, why isn't that enough? The description you're describing talks about the enablement requirement, how to make these hybridomas, and how to make the antibodies. Enablement is a distinct requirement from written description. Well, I guess what I'm really challenging is whether written description always requires structure, or whether it can be satisfied by other means than structure, like describing the molecule. Correct, Your Honor. Written description, there are multiple ways to satisfy the written description inquiry. One way is the representative species test. Another way is the structure test. Another way is the function structure test. So, it depends. Applicant is the master of their specification, and they can select the way that they choose. She says they selected the third of the alternatives, and that they fulfilled it. You say they don't fulfill it, so explain to us why not. Well, the third alternative being the function structure test. First of all, applicant waived any argument to that test. They never brought this argument up before the board in any way, shape, or form, so they shouldn't be bringing it up before this court. That's highly disputed, and we'll have to sort that out. Obviously, if it's waived, we don't normally entertain it. So, I don't think you need to pursue that further. We'll just have to look more closely at the briefing in front of the board to figure out whether we think it was adequately raised or not. So, let's go to the merits. Well, to the extent it is before this court, to satisfy the function structure test, this court has explained, and we have a case in point, Noel V. Letterman, that talks about an antibody invention. In that context, what this court has said is that if you describe the structure for the antigen that binds to the antibody, then you can avail all the properties of the known antibody-antigen relationship, the five classes of antibodies known in the art, all the information known about antibodies to establish written description. Well, here, we don't have a characterization of the common structural features for all of the antigens to which these claimed antibodies bind. We have it for one, and as we acknowledge in our brief, applicant Alonzo may be able to establish satisfaction of the function structure correlation test for the one antigen and antibody of example two, but that's far short from being able to establish it for the broad genus of monoclonal antibodies required to practice the method of treatment. So applicant Alonzo falls exactly into the fact pattern of Noel. So if you apply that here, you would conclude that the function structure test is not satisfying. Maybe if Noel describes the outer limit of how you can satisfy through the correlation, then maybe the result you request is the only possible result. But perhaps Ms. Johnson is suggesting that given the maturity of the art here, that that's too rigid a requirement. I respectfully disagree, because in this case, we have absolutely no information about common structural features of the antibodies apart from the one antibody of example two, and we don't have any information about the antigens to which they bind. Therefore, what they're doing here in this case is describing this unknown by reference to another unknown. Well, that's true in a way, but she seems to be arguing that because the complementarity of the binding sites on the antibodies and antigens is an exact one-for-one relationship, that if you take the cancer cell of any patient and through the hybridoma technology produce monoclonal antibodies, they will definitely bind that patient's cancer antigens. That would be true for any antibody antigen out there. There would be no way, if that's the test, to determine which antibodies and antigens fall within the scope of this claim. It would be like saying if you have a claim to a DNA molecule... Well, that sounds like you're saying there's a claim indefiniteness problem, and that would be a separate basis of invalidity or unpatentability. But the only basis in the case before us as it comes here is a failure of written description, not claim indefiniteness or over breadth or 101 or some other kind of problem. So then the issue seems to be, well, exactly what is the test? And you have your version of the test based on Noel and some other authorities you cite, and Ms. Johnson seems to be suggesting a somewhat more flexible or varied version of the test. And as I understand her argument, she justifies that by saying the whole point of the written description requirement is to be able to be confident that the inventor actually invented what's claimed. And she says here that's plainly shown even though there isn't any explicit detail about structure. So she's in effect saying in my kind of case, structural description shouldn't be required because it's not needed to show possession by the inventor back at the time of the application of the full scope of the claim as drafted. Now, if she's right that it meets the possession test, what more should be demanded of the written description requirement? Well, first of all, this Court has explained in ENSO that possession is not the same thing as written description. You can have possession of an invention. Let me ask it this way. Other than to assure possession, what other objective does the written description requirement have, if any? The written description requirement is designed to satisfy a quid pro quo. But that's just another way of saying possession, right? We don't want to give somebody a patent that's broader than what they actually invented. But that's just saying we need to be sure that at the time of the application, the purported inventor actually had possession of the full completed invention for the full breadth of his claim. What we're trying to do with the written description requirement is prevent an inventor from excluding the public from practicing an invention broader than the scope he's entitled to through his written description. You're alluding to a teaching function, isn't that the argument you're making? Yes, Your Honor. Would I be wrong if I tried to recharacterize your argument? What you're saying is that if there is an invention, the most that is described in this patent is an invention that can be used to treat Melanie Brown for a specific type of cancer. That's correct, Your Honor. And the examiner, in fact, has suggested to Applicant Alonzo that he amend Claim 92 to narrow it to the antibodies for Melanie Brown two times. Applicant Alonzo declines to do so. But, of course, that's ludicrous, because a patent for treat one patient would be worth nothing unless that patient happened to be Bill Gates or something. That's not entirely correct, because through Applicant's own prosecution history, he's explained that the antibodies that are specific for Melanie Brown may work to treat somebody else who just coincidentally ends up having the same type of neurofibrosarcoma and the same antigens. But still, a patent to Melanie Brown and a few others isn't much of a patent. Not to the same commercial scope that the claim that they're seeking is. No, you're correct. So in this case, what we have is a failure of the representative species test for written description, a failure of the function structure test. Applicant has nothing left. They have not adequately described their invention, and substantial evidence supports the Board's findings of inadequate written description. Can you help me a little more on understanding why, in the context of this claim, not in general, but in the context of this claim, it's so important for the structure of the antigen or the antibody to be set forth in some detail? We need to understand what the structure of the antibodies are to be able to distinguish those antibodies that would work in this claimed method from all of the other antibodies that exist in nature. As you pointed out, the generic Y-shaped structure of an antibody won't do it because all antibodies that exist in nature have that structure. There's no characteristics that are set forth in the specification for a skilled artisan to be able to figure out what antibodies could be used successfully to treat neurofibrosarcoma. A second issue I want to raise... I thought the whole point of the invention was to answer that question by saying we know what the right antibody is if we produce it from the cell of the cancer of the patient in question. We know how to make the antibody, but we don't know what it is that we've just made and will be... Well, the important thing that I think we might know is that it will bind because the part of the antigen that binds and the part of the antibody that binds meet. That's correct. We know that it will bind. But that's the only structure that counts. The rest of the structure is irrelevant. And we don't have any definition of that variable portion that's common to all antibodies. Binding alone is a description by function. There's no question it's function. I agree with you on that. But it also implies a correlation of structure because we know that it won't bind if the parts don't match. If the binding parts don't match, it won't bind. If they do match, it will bind. The only way we'll be able to establish structure by knowing the function is if we have some characterization of the antigen to which it binds. That's the underlying principle of the function structure test. And here, we don't have any description of the underlying structure or characterization of the antibodies except the antibody or antigen of example 2. So binding was something known long before Dr. Lanza got around to his method. Is that right? Pardon me? The binding was something known long before Dr. Lanza got around to it. That's been well established in the science for years. Well, it sounds like if your version of the written description requirement is accurate, then the board has to be affirmed. So I guess the issue comes down to whether there's any wiggle room left for Ms. Johnson's version of the written description test. Now, as a matter of policy, tell me again why her version shouldn't be allowed? Ms. Johnson What would the harm be? I'm trying to figure out what claims would get allowed that shouldn't get allowed. The harm in this case would be we would be granting a patent if we reverse the written description requirement here, we would be granting a patent to Dr. Alonzo with much broader scope than he's entitled to. He didn't describe the antibodies so broadly in his specification. He doesn't have written description support for them. So we would then, once that patent becomes effective, be permitting him to exclude others from practicing an invention that he's not entitled to. What he's entitled to is what he described, and that is only the antibody in Example 2 of the specification. Well, what about the 19 pages of methodology that's also described in the specification? That is going to teach others how to make human-human hybridomas and how to make customized antibodies. It describes nothing about what those antibodies are. Well, except that you could argue that it describes antibodies, the binding portions of which will match. But we have no idea what those binding portions are, and that's what's necessary to satisfy written description. Why? To be able to distinguish the antibodies that fall within the scope of the claim from all other antibodies out there in the universe. We have to know what common structural features the claimed antibodies have to establish that those... That sounds like you're saying there'd be a problem of knowing whether somebody's infringing or not infringing. In a sense, that's what we're getting at, is being able to establish what antibodies fall within the scope of the claim for... You know, it seems like if I'm practicing the method that is the subject of the application, if I follow the 19 pages, start out with the cancer patient's cell, it will bind, and if not, it won't. And whether it binds or not will tell you whether there's an infringement or not. But that goes back to the function. If we look at Rochester, Rochester explains there has to be written description support for each and every limitation of the claim. The monoclonal antibodies are a limitation of this claim, and we must have written description support for them. The facts here are very, very similar to those in Rochester. And when Rochester is applied, this Court should come to the conclusion there is, just like there was in Rochester, a lack of written description support for the compounds that are being administered in a method of treatment claim. All right, thank you. Ms. Johnson, three minutes. Your Honors, there's just a few points that I would like to make in response to Ms. Gungle's argument. The first is she's claiming, or the PTO is claiming, that this case is merely a repeat of Rochester in the area of antibody technology. But that is not true. In Rochester, the genus was vast, it was diverse, it covered all non-steroidal compounds that would inhibit a particular enzyme's activity. And there was no relationship between the structure of any of these non-steroidal compounds. There could be, you know, small molecules, proteins, a diverse array. The genus in Rochester was much larger than the genus here. And the second point is that the inventors did not possess a single one. They did not possess a single embodiment. So here, Dr. Alonzo's work was not hypothetical, and that was something that the Rochester Court focused on. He possessed an embodiment of the invention, he conceived of a method, he reduced it to practice. And this structure-function relationship between the class of antibodies guarantees that this genus is much, much narrower than the genus in Rochester. The second point I'd like to make goes to the policy question that you brought up. In Lilly, another written description case that the PTO relies on, Lilly set forth this policy of rewarding people who actually carry out inventions, not those that merely have a wish or a plan for doing so. This is to prevent supposed inventors from preempting the future. But here, Dr. Alonzo practiced the method. He conceived of it, he reduced it to practice. This is not an instance where he's preempting the future. He definitely falls within the policy of Lilly, where, in fact, he did the work. I'm just out of curiosity. I know this has been a long ongoing thought after time. Do people actually practice this method now? Are there other examples besides Dr. Alonzo's work with Lonnie Brown, that people actually use his method? Your Honor, I know that Dr. Alonzo has practiced this general method of treating a patient with cancer with antibodies directed to his own cancer and other types of cancer besides neurofibrosarcoma. I am not aware, I just don't know, of whether other people, other companies, are currently practicing this method in general on cancer or specifically on neurofibrosarcoma patients. I just don't know the answer to that question. The other case that was brought up significantly by the Board is Noel. Again, it's important to realize that in Noel, the claim was to an antibody that was defined only by its ability to bind to a specific antigen. That is not the case here. As we said, this is a method for treating using the customized antibody. And if Noel required that all antibody cases had written description only by well characterizing the antigen, then Dr. Alonzo cannot meet that test. And that is precisely the point of the claimed invention as this Court has raised. Well, we certainly are bound by all of the precedents of the predecessor Court and earlier panels and in-bank panels of this Court. So we're bound by Noel and we're bound by Enzo and we're bound by all these other cases that you've both been mentioning. So in view of that, what leeway do we have, even if we agreed with you in some broad philosophical or policy or economic plane, what leeway do we have to alter the written description test as described in those cases? Your Honor, Dr. Alonzo submits that, of course, you're indeed bound by those precedents, but the cases are clearly distinguishable for the reasons that I just mentioned and those in the brief, this is not an exact repeat of Noel, Rochester, or Lilly by any stretch. Well, maybe not. And maybe they can be distinguished. But even so, aren't we stuck with the doctrine as enunciated by earlier panels of the Court, whether we agree with it or not, whether we think it could have been different or not? Yes, you are. But keep in mind that the overall test for written description is whether the inventor had possession of the claimed invention. And we submit that Dr. Alonzo did indeed, based on the work that he did, the fact that the genus is narrow, and the built-in structure-function relationship between all of the antibodies that will be used in Claim 92. All right. Thank you both. We'll take the appeal under advisory. Thank you, Your Honor. All rise.